ANTHONY R. SEGALL (CSB No. 101340)
asegall@rsglabor.com
ROTHNER, SEGALL & GREENSTONE
510 South Marengo Avenue
Pasadena, California 91101-3115
Telephone: (626) 796-7555
Facsimile: (626) 577-0124

KATHERINE S. CHRISTOVICH (CSB No. 178397)
LEILA B. AZARI (CSB No. 262443)
lazari@wga.org
WRITERS GUILD OF AMERICA, WEST, INC.
7000 West Third Street
Los Angeles, CA 90048
Telephone: (323) 782-4521
Facsimile: (323) 782-4806

Attorneys for Respondent Writers Guild of America, West, Inc. and Real Parties in Interest David E. Callaham and Jittery Dog Productions, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DISTRICT

| | |
|---|---|
| DOUBLE LIFE PRODUCTIONS, INC., a California corporation,<br><br>Petitioner,<br><br>vs.<br><br>WRITERS GUILD OF AMERICA, WEST, INC., a California corporation,<br><br>Respondent;<br><br>DAVID E. CALLAHAM, an individual; and JITTERY DOG PRODUCTIONS, INC., a California corporation,<br><br>Real Parties in Interest. | CASE NO. 2:14-CV-00197 DMG-AJWX<br><br>Honorable Dolly M. Gee<br><br>RESPONDENTS' OPPOSITION TO PETITIONER'S *EX PARTE* APPLICATIONS FOR TEMPORARY RESTRAINING ORDER AND ORDER DISQUALIFYING OPPOSING COUNSEL; AND DECLARATION OR KATHERINE SHANNON CHRISTOVICH IN SUPPORT THEREOF<br><br>Date:       None<br>Time:       None<br>Courtroom: 7<br><br>[PROPOSED] ORDER LODGED CONCURRENTLY |

## I.   INTRODUCTION

Petitioner's separate *Ex Parte* Applications for (1) a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction; and (2) an Order Disqualifying Opposing Counsel (together, "Applications"; singularly, "TRO Application" and "Disqualification Application," respectively) should be denied for multiple reasons.

First, the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, deprives this Court of jurisdiction to enjoin the January 31 arbitration.

Second, even if the Court had jurisdiction, the Applications would fail because Petitioner has not shown that it will suffer immediate injury or irreparable harm. Petitioner admits that it discovered the alleged fraudulent conduct upon which the Applications are based over a year ago.  There is no excuse for Petitioner having waited a year to seek an injunction staying the arbitration, especially given its prior attempts to delay the arbitration on different grounds.

Third, Petitioner's state law claims in the Verified Petition for Writ of Mandate, For A Writ of Prohibition and/or a Writ of Review or Certiorari ("Petition") are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and therefore cannot succeed on the merits.

Finally, the Disqualification Application fails because no actual or potential conflict of interest exists between the Guild and Mr. Callaham.

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER
DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

## II.    THE UNDERLYING ARBITRATION

Respondent Writers Guild of America, West, Inc. ("WGAW" or "Guild") is a labor organization representing writers in the motion picture, television and new media industries.   It is party to a multiemployer collective bargaining agreement called the Writers Guild Theatrical and Television Basic Agreement, commonly known as the "MBA." The MBA establishes terms and conditions of employment for writers employed by signatory producers throughout the United States. Articles 10-12 of the MBA establish a dispute resolution procedure, which culminates in binding arbitration. The core function of the WGAW Legal Department is to handle grievance and arbitration matters under the MBA on behalf of itself and members of the bargaining unit represented by the WGAW. *See* Declaration of Katherine S. Christovich ("Christovich Decl.") ¶ 3.

Petitioner Double Life Productions, Inc. ("Double Life") is signatory to the MBA and Millennium Films, Inc., Nu Image, Alta Vista Productions, Inc. ("AVP"), Alta Vista Financing, LLC and Alta Vista Productions, LLC are corporate entities all related to Double Life.   Petitioner and these related companies are all business entities involved in the production and distribution of the theatrical motion picture "The Expendables" ("Picture").  Christovich Decl. ¶ 4.

On November 14, 2002, Warner Bros. Pictures, signatory to the MBA, entered into a Blind Commitment Agreement ("Agreement") with Callaham for Callaham to write an original screenplay and a rewrite in connection with the Picture. Pursuant to the Agreement, Callaham wrote and delivered the screenplay and the rewrite ("Literary Material") to Warner Bros.  Christovich Decl. ¶ 5.

1  On February 5, 2009, Double Life signed a WGA Literary Material Assumption
2  Agreement in which it agreed to assume all of Warner Bros.' obligations under the
3  MBA in connection with the Picture. On March 26, 2009, AVP entered into a
4  separate WGA Literary Material Assumption Agreement with Double Life, in which
5  it, too, assumed all MBA obligations in connection with the literary material.
6  Christovich Decl. ¶ 6. Petitioner produced the Picture in 2009. *Id.*, at ¶ 4.
7
8  Article 8 of the MBA gives the Guild contractual authority to determine screen
9  credits for motion pictures subject to its terms. In 2009, the Guild conducted a
10  procedure to determine the credits for the Picture, which included having the scripts
11  for the project read by a three-member Arbitration Committee and having the
12  Committee's decision reviewed by a body known as a Policy Review Board. As a
13  result of that procedure, on September 22, 2009, the Guild issued its final
14  determination of the writing credits for the Picture as follows:
15
16  Screenplay by David Callaham and Sylvester Stallone
17  Story by David Callaham
18  Christovich Decl. ¶ 8.
19
20  In late 2011, Petitioner produced a sequel to the Picture: the theatrical motion
21  picture "The Expendables 2." The Sequel was released theatrically on August 19,
22  2012. A dispute thereafter arose between the Guild and Petitioner and its related
23  companies over Callaham's entitlement to additional monies—known as a "sequel
24  payment"—based on "Expendables 2." [1]  Christovich Decl. ¶ 9.
25
26  _____
    [1] Petitioner Double Life, Millennium Films, Inc., Nu Image, Alta Vista Productions, Inc., Alta Vista Financing, LLC and
27  Alta Vista Productions, LLC are all related corporate entities involved in the production and distribution of the Picture;
    they are all named in the Guild's Arbitration Claim and are all represented by Mr. Coate. For ease of reference, this
28  Opposition and supporting Declaration sometimes collectively refers to these Arbitration Claim Respondents as
    "Petitioner."

4

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER
DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

1    On May 15, 2013, the Guild served on Petitioner and its related companies a
2 Notice of Claim Submitted to Arbitration and Claim ("Arbitration Claim"), seeking to
3 collect the sequel payment plus accrued interest. Christovich Decl. ¶ 10.

4

5    In July 2013, the Guild commenced the arbitrator selection process pursuant to
6 the MBA with Warner Bros. and Petitioner.  Having received no response to the
7 commencement, pursuant to the MBA, the Guild selected Arbitrator Paul Crost from
8 the list of arbitrators contained in the MBA. Petitioner never objected to the Guild's
9 selection of Arbitrator Crost.  Christovich Decl. ¶ 11.

10

11    On August 27, 2013, the Guild's Calendaring Coordinator, Marguerite Hall,
12 emailed Arbitrator Crost and Frank DeMartini, Petitioner's general counsel, advising
13 that Petitioner said it would not be available for any hearing from January through
14 July 2014. In her email, Hall asked Arbitrator Crost for dates in October, November or
15 December 2013. On August 27, 2013, DelMarie C. Broco, another of Petitioner's
16 attorneys, emailed Crost and advised that DeMartini would be out of the country until
17 July 2014, so Petitioner would not be available for hearing until August 2014, a year
18 later.  No mention was made of any statements or emails of Callaham nor any
19 potential court action based thereon. *See* Ex. A to Christovich Decl. ¶ 12.

20

21    On September 19, 2013, after considering Petitioner's request and the Guild's
22 response, Arbitrator Crost emailed the parties that it would be unreasonable to stay
23 proceedings for one year and set the hearing date for January 31, 2014. (*Id.*)  In
24 response to this email, DeMartini advised Crost and the Guild that he would be
25 retaining counsel for the Petitioner, Charles M. Coate, as Petitioner intended to bring a
26 "cross-claim" and that all future communications should go to Coate. (*Id.*)

27

28

1        In late November 2013, Petitioner delivered to the Guild unfiled copies of two

2   civil court actions, one of which was substantially similar to the writ petition

3   ultimately filed in Los Angeles Superior Court on December 24, 2013, and now

4   pending before this court.  Attached to the draft petition were copies of the two emails

5   written by Callaham, which are discussed at length in the Applications.

6

7        On January 3, 2014, Petitioner's counsel, Mr. Coate, asked for the Guild to

8   agree to a continuance of the January 31, 2014 arbitration date, which would not be

9   re-set until after the court had ruled on Petitioner's court actions. The Guild declined

10  the request. Christovich Decl. ¶ 15.

11

12       Mr. Coate sent a letter dated January 6, 2014 to Arbitrator Crost requesting a

13  continuance of the arbitration hearing.  Mr. Coate's letter states in part, "Our client

14  only discovered Mr. Callaham's fraudulent conduct years later in early 2013...." (*See*

15  Ex. B to Christovich Decl. ¶ 16.)  Petitioner's own verified pleadings in this action

16  also provide that it knew of the facts that formed the basis for these court actions in

17  early 2013, nearly a year before the actions were filed and months before the

18  Arbitration Claim was set for hearing before Arbitrator Crost.

19

20       Arbitrator Crost held a conference call on January 8, 2014 to address

21  Petitioner's request for a continuance of the January 31, 2014 hearing.  Arbitrator

22  Crost denied the request in a written order dated January 9, 2014. *See* Ex. C to

23  Christovich Decl. ¶ 17.

24

25

26

27

28

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER
DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

## III.   PETITIONER'S REQUEST FOR A PRELIMINARY INJUNCTION IS BARRED UNDER THE NORRIS-LAGUARDIA ACT

In the TRO Application, Petitioner seeks a preliminary injunction staying the labor arbitration scheduled for January 31, 2014.  The underlying arbitration is based on a claim brought by the Guild and Callaham against Petitioner and other affiliated entities for their failure to make certain payments in violation of the Guild's collective bargaining agreement known as the MBA.  *See* Christovich Decl. ¶ 3.

Because Petitioner's request for a preliminary injunction seeks to stay an arbitration involving a labor dispute, it is barred under the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115.  This Act "severely restrict[s] the jurisdiction of the federal courts to issue injunctions in 'any labor dispute.'"  *Camping Construction Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1341 (9th Cir. 1990).  Specifically, the Act sets forth numerous strict requirements which must be met before a federal court may issue an injunction, including, *inter alia*, an evidentiary hearing, specific findings of fact by the court, and the posting of a bond.  *See* 29 U.S.C. § 107.

*Camping Construction* precludes the injunction Petitioner seeks here.  There, a district court issued an order staying a labor arbitration between a union and construction company pending resolution in court of an arbitrability issue.  915 F.2d at 1340.  The Ninth Circuit reversed the order, holding that the trial court lacked jurisdiction to enter a preliminary injunction because the specific requirements set forth in the Norris-LaGuardia Act had not been met.  *Id.* at 1350.  In reaching this conclusion, the Court observed that "[a]rbitration is designed to settle labor disputes quickly, as they arise; most of its value is lost if stayed by a federal court" and further rejected the argument that "unnecessarily undergoing arbitration proceedings constitutes irreparable injury."  *Id.* at 1345, 1349.

1    In addition to the Ninth Circuit, five other courts of appeals "have ruled that the
2  Norris-LaGuardia Act divests [federal courts] of jurisdiction to enjoin arbitration of a
3  labor dispute in cases [under Section 301 of the Labor Management Relations Act]
4  unless the requirements of the Act are met." *Fiend, Inc. v. Int'l Alliance of Theatrical*
5  *Stage Emples.*, 827 F. Supp. 2d 1030, 1033 (D. Minn. 2011) (citing cases). Here,
6  there is no dispute that Petitioner seeks a preliminary injunction to stay an arbitration
7  stemming from a labor dispute. Because none of the requirements of the Norris-
8  LaGuardia Act have been met, this Court lacks jurisdiction to issue the injunction
9  Petitioner seeks.

10
11    **IV.   PETITIONER HAS NOT SHOWN THAT IT WILL SUFFER**
12          **IMMEDIATE INJURY OR A LIKELIHOOD OF**
13          **IRREPARABLE HARM**
14
15    In its TRO Application, Petitioner claims that it will suffer irreparable harm if
16  the arbitration goes forward as scheduled on January 31. The argument is belied by
17  the facts. First, while Petitioner now claims that it is likely to suffer irreparable injury
18  absent an injunction because Arbitrator Crost is "certain to rule in the Guild's favor,"
19  it has never previously objected to the Guild's selection of Arbitrator Crost in July
20  2013, nor did it exercise its rights to participate in the arbitrator selection process at
21  that time. *See* Christovich Decl. ¶ 11.
22
23    Second, while Petitioner now claims that the arbitration must be stayed because
24  of Mr. Callaham's allegedly "fraudulent conduct," it fails to mention its prior
25  attempts, made months ago, to delay the arbitration for a year for entirely different
26  reasons. In August of 2013, Petitioner's attorney emailed Arbitrator Crost and
27  advised that DeMartini would be out of the country until July 2014, so Petitioner
28

1 | would not be available for hearing until August 2014, a year later. *See* Christovich
2 | Decl. ¶ 12.

3

4 | Even though this request to delay the arbitration occurred *after* Petitioner
5 | apparently became aware of Callaham's purported "fraudulent" emails, no mention
6 | was made to Arbitrator Crost or the Guild of any statements or emails of Callaham nor
7 | any potential court action based thereon. *Id*. On September 19, 2013, after
8 | considering Petitioner's request and the Guild's response, Crost emailed the parties
9 | that it would be unreasonable to stay proceedings for one year and set the hearing date
10 | for January 31, 2014. *Id*. ¶ 13, Ex. A. In response to this email, DeMartini advised
11 | Arbitrator Crost and the Guild that he would be retaining counsel for the Petitioner,
12 | Charles M. Coate, as Petitioner intended to bring a "cross-claim" and that all future
13 | communications should go to Coate. *Id*.

14

15 | Most important, Petitioner states in its verified pleadings that *it became aware*
16 | *of Callaham's allegedly fraudulent conduct in early 2013.* This admission is echoed
17 | in recent correspondence of Mr. Coate in support of Petitioner's request for a
18 | continuance of the arbitration. Nowhere does Petitioner explain why it waited almost
19 | a year—until the eve of arbirtration--to assert the emails as a basis for postponing the
20 | hearing. *See* Christovich Decl. ¶ 16.

21
22 | **V.  THE CLAIMS IN THE PETITION ARE COMPLETELY**
   |        **PREEMPTED BY § 301 OF THE LMRA**
23

24 | The requested injunctive relief should also be denied because Petitioner has not
25 | shown that it is likely to prevail on the merits of the underlying state law claims. As
26 | we will argue more fully in dispositive motions to be filed shortly, all of the state law
27 | claims in the Petition are completely preempted by LMRA § 301 because they are
28 | based on rights or duties determined under a collective bargaining agreement. *See*

1  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) ("If the resolution

2  of a state-law claim depends upon the meaning of a collective-bargaining agreement,

3  the application of state law … is pre-empted and federal labor law principles --

4  necessarily uniform throughout the Nation -- must be employed to resolve the

5  dispute."); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1407-08 (9th Cir.

6  1991) (recognizing that if "resolution of the state law claim requires interpretation of

7  the collective bargaining agreement," the claim is completely preempted by § 301).

## VI.  PETITIONER IS NOT ENTITLED TO AN EX PARTE ORDER DISQUALIFYING THE GUILD AS OPPOSING COUNSEL

As stated in detail above, there is no evidence of irreparable harm in the *Ex Parte* Application. For this reason, Petitioner's request for an order disqualifying opposing counsel must also be denied. "In order to justify ex parte relief, the evidence must show that the moving party's cause will be *irreparably prejudiced* if the underlying motion is heard according to regular noticed motion procedures." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) (emphasis added).  Petitioner has not cited any authority for the proposition that an opposing party's representation by counsel with an alleged conflict of interest can constitute irreparable harm.

Even more important, Petitioner has failed to show any actual or potential conflict of interest exists that would justify disqualification of the Guild as counsel for Callaham or his loan-out company, Jittery Dog Productions, Inc.  The Guild's position on this issue is set forth in a January 15, 2014 letter from its general counsel, Anthony Segall, to Mr. Coate. *See* Christovich Decl. ¶ 18, Ex.D.  In this letter, Mr. Segall affirms: "the interest of all the clients we represent in the litigation is the same: to uphold the finality of a procedurally regular and contractually compliant credit

1  arbitration conducted and concluded in 2009.  Nothing alleged in the [Petition] on file

2  … provides a basis for pursuing a different objective." *Id.*

3

4  **VII.   CONCLUSION**

5

6  For all of the reasons stated herein, the Guild and Callaham respectfully request

7  that Petitioner's separate *Ex Parte* Applications for (1) a Temporary Restraining Order

8  and Order to Show Cause Re: Preliminary Injunction; and (2) an Order Disqualifying

9  Opposing Counsel be denied in their entirety.

10

11  Dated: January 22, 2014        ANTHONY R. SEGALL

12                                 ROTHNER, SEGALL & GREENSTONE

13

14                                 KATHERINE S. CHRISTOVICH
                                   LEILA B. AZARI
15                                 WRITERS GUILD OF AMERICA, WEST, INC.

16

17                                 By:_____/s/ Leila Azari_____
                                        LEILA B. AZARI
18                                 Attorneys for Respondent Writers Guild of America,
19                                 West, Inc. and Real Parties in Interest David E.
                                   Callaham and Jittery Dog Productions, Inc.
20

21

22

23

24

25

26

27

28

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER
DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

## DECLARATION OF KATHERINE SHANNON CHRISTOVICH

I, Katherine Shannon Christovich, declare:

1.      I am an attorney at law duly admitted to practice before all the courts of the State of California and the United States Central District of California. I am one of the attorneys in this action for respondent Writers Guild of America, West, Inc. ("WGAW" or "Guild") and real parties in interest Jittery Dog Productions, Inc. and David Callaham ("Callaham") (collectively, "Respondents").  I am able to state the matters recited herein are of my own personal knowledge. If called before this court and placed under oath I could and would testify competently to the following.

2.      I have been an attorney at the Guild since 2003.  Since 2009, I have held the position of Director of Legal Services.

3.      The WGAW is a labor organization representing writers in the motion picture, television and new media industries.   It is party to a multiemployer collective bargaining agreement called the Writers Guild Theatrical and Television Basic Agreement, commonly known as the "MBA." The MBA establishes terms and conditions of employment for writers employed by signatory producers throughout the United States. Articles 10-12 of the MBA establish a dispute resolution procedure, which culminates in binding arbitration.  The core function of the WGAW Legal Department is to handle grievance and arbitration matters under the MBA on behalf of itself and members of the bargaining unit represented by the WGAW.

4.      Petitioner Double Life Productions, Inc. ("Double Life") is signatory to the MBA and Millennium Films, Inc., Nu Image, Alta Vista Productions, Inc. ("AVP"), Alta Vista Financing, LLC and Alta Vista Productions, LLC are corporate

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER
DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

1  entities all related to Double Life.   Petitioner and these related companies are all

2  business entities involved in the production and distribution of the theatrical motion

3  picture "The Expendables" ("Picture").

4

5       5.     On November 14, 2002, Warner Bros. Pictures, signatory to the MBA,

6  entered into a Blind Commitment Agreement ("Agreement") with Callaham for

7  Callaham to write an original screenplay and a rewrite in connection with the Picture.

8  Pursuant to the Agreement, Callaham wrote and delivered the screenplay and the

9  rewrite ("Literary Material") to Warner Bros.

10

11       6.     On February 5, 2009, Double Life signed a WGA Literary Material

12  Assumption Agreement in which it agreed to assume all of Warner Bros.' obligations

13  under the MBA in connection with the Picture. On March 26, 2009, AVP entered into

14  a separate WGA Literary Material Assumption Agreement with Double Life, in which

15  it, too, assumed all MBA obligations in connection with the literary material.

16

17       7.     Petitioner produced the Picture in 2009.

18

19       8.     Article 8 of the MBA gives the Guild contractual authority to determine

20  screen credits for motion pictures subject to its terms. In 2009, the Guild conducted a

21  procedure to determine the credits for the Picture, which included having the scripts

22  for the project read by a three-member Arbitration Committee and having the

23  Committee's decision reviewed by a body known as a Policy Review Board.   As a

24  result of that procedure, on September 22, 2009, the Guild issued its final

25  determination of the writing credits for the Picture as follows:

26                      Screenplay by David Callaham and Sylvester Stallone

27                      Story by David Callaham

28

1        9.     In late 2011, Petitioner produced a sequel to the Picture: the theatrical

2  motion picture "Expendables 2." The Sequel was released theatrically on August 19,

3  2012. A dispute thereafter arose between the Guild and Petitioner over Callaham's

4  entitlement to additional monies—known as a "sequel payment"—based on

5  "Expendables 2."

6

7        10.    On May 15, 2013, the Guild served on Petitioner and the related

8  companies referenced in para. 4, *supra*, a Notice of Claim Submitted to Arbitration

9  and Claim ("Arbitration Claim"), seeking to collect the sequel payment plus accrued

10  interest.

11

12        11.    In July 2013, the Guild commenced the arbitrator selection process

13  pursuant to the MBA with Warner Bros., Petitioner and the related companies.

14  Having received no response to the commencement, pursuant to the MBA, the Guild

15  selected Arbitrator Paul Crost from the list of arbitrators contained in the MBA.

16  Petitioner has never objected the Guild's selection of Arbitrator Crost.

17

18        12.    On August 27, 2013, the Guild's Calendaring Coordinator, Marguerite

19  Hall, emailed Arbitrator Crost and DeMartini, advising that Petitioner said it would

20  not be available for any hearing from January through July 2014. In her email, Hall

21  asked Arbitrator Crost for dates in October, November or December 2013. On August

22  27, 2013, DelMarie C. Broco, another of the Petitioner's attorneys, emailed Crost and

23  advised that DeMartini would be out of the country until July 2014, so Petitioner

24  would not be available for hearing until August 2014, a year later. No mention was

25  made of any statements or emails of Callaham nor any potential court action based

26  thereon. (Attached hereto as Ex. A is a true and correct copy of the emails exchanged

27  between the parties and Arbitrator Crost in August 2013.)

28

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER
DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

13. On September 19, 2013, after considering Petitioner's request and the Guild's response, Crost emailed the parties that it would be unreasonable to stay proceedings for one year and set the hearing date for January 31, 2014. (Ex. A.) In response to this email, DeMartini advised Crost and the Guild that he would be retaining counsel for the Petitioner, Charles M. Coate, as Petitioner intended to bring a "cross-claim" and that all future communications should go to Coate. (Ex. A.)

14. In late November 2013, Petitioner delivered to my attention unfiled copies of two civil court actions, one of which was substantially similar to the writ petition ultimately filed in Los Angeles Superior Court on December 24, 2013, and now pending before this court. Attached to the draft petition were copies of the two emails written by Callaham, which are discussed at length in the ex parte application. (See Applic.)

15. On January 3, 2014, Petitioner's counsel, Mr. Coate, asked for the Guild to agree to a continuance of the January 31, 2014 arbitration date, which would not be re-set until after the court had ruled on Petitioner's court actions. The Guild declined the request.

16. Mr. Coate sent a letter dated January 6, 2014 to Arbitrator Crost requesting a continuance of the arbitration hearing. Mr. Coate's letter states in part, "Our client only discovered Mr. Callaham's fraudulent conduct years later in early 2013…." (Attached hereto as Ex. B is a true and correct copy of Mr. Coate's January 6, 2013 letter.) Petitioner's own verified pleadings in this action also provide that it knew of the facts that formed the basis for these court actions in early 2013, nearly a year before the actions were filed and months before the Arbitration Claim was set for hearing before Arbitrator Crost.

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

1       17.    Arbitrator Crost held a conference call on January 8, 2014 to address

2    Petitioner's request for a continuance of the January 31, 2014 hearing.  Arbitrator

3    Crost denied the request in a written order dated January 9, 2014, a true and correct

4    copy of which is attached as Exhibit C.

5

6       18.    By letter dated January 13, 2014, Mr. Coate solicited my withdrawal as

7    well as the withdrawal of Guild general counsel Anthony R. Segall as counsel of

8    record for the Guild and Callaham.  On January 15, 2014, Mr. Segall responded by

9    letter to this request, which we denied. Attached hereto as Exhibit D is a true and

10   correct copy of Segall's January 15 letter.

11

12      I declare under penalty of perjury under the laws of the United States of

13   America that the foregoing is true and correct and was executed this 22nd day of

14   January 2014, in Los Angeles, California.

15

16

17   _____

18       Katherine Shannon Christovich

19

20

21

22

23

24

25

26

27

28

RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR T.R.O. AND ORDER
DISQUALIFYING COUNSEL; DECLARATION OF KATHERINE S. CHRISTOVICH

# EXHIBIT A

**Kathy Christovich**

| | |
|---|---|
| **From:** | ADFTD@aol.com |
| **Sent:** | Monday, September 23, 2013 12:19 PM |
| **To:** | pecrost@gmail.com; Katya Culberg |
| **Cc:** | dbroco@nuimage.net; Marguerite Hall; Katherine Shannon Christovich; ccoate@cacllp.com |
| **Subject:** | Re: WGAW v. Double Life Productions, Inc. et al.;["The Expendables"];12-SR-004 |

Arbitrator Crost:

We are going to turn this matter over to Charles Coate, Esq. for hearing as this date just doesn't work for us and we are planning on filing a cross-claim against the real party in interest.  Please contact him on behalf of Millennium/Nu Image from this point forward and he will deal with me.

Thank you,

Frank T. DeMartini
General Counsel
Millennium Films/Nu Image
6423 Wilshire Blvd.
Los Angeles, CA 90048
(310) 388-6900

NOTICE: This E-mail is covered by the Electronic Communications Privacy Act 18 U.S.C. §§ 2510-2521 and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If you have received this E-mail and are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this E-mail by mistake, please notify us immediately by replying to the message and deleting it and attachment(s), if any, from your computer. Thank you for your cooperation

In a message dated 9/19/2013 6:23:11 P.M. Pacific Daylight Time, pecrost@gmail.com writes:

I have reviewed the request for postponing the hearing in this matter to August 2014, as well as the Guild's response.  On the issue of witness availability, testimony can be taken by telephone.  As to the availability of counsel, it is unreasonable to stay proceedings for 1 year.  Therefore, I am setting the hearing for January 31, 2014.  By copy of this email I am requesting the Guild to issue a notice of hearing.


Paul Crost Mediation
5318 East 2nd Street, Ste. 381
Long Beach, CA 90803
Tel:562 608 8433
Mobile: 213 392 0696
Fax: 562 245 3623


On Wed, Aug 28, 2013 at 7:12 PM, Katya Culberg <KCulberg@wga.org> wrote:

Dear Arbitrator Crost,



We were copied on Company counsel's email to you from earlier today explaining that Company will not agree to a hearing date in the above-referenced matter before late August 2014—a year from now. The Guild had previously asked Respondents to provide us with their preference among the four dates in January 2014 that

you gave us (January 27, 29, 30 or 31, 2014). With this email and for the reasons discussed herein we respectfully ask you to set the hearing date on one of these dates in January 2014.

By way of a brief background, this is a simple case for an unpaid production bonus in the amount of $175,000 owed to one of the writers of the original theatrical motion picture "The Expendables" upon Respondents' production of the sequel to the Picture, which occurred nearly two years ago. Respondents have yet to raise any credible argument as to why this money isn't due.

Now Respondents say they are unavailable for hearing for the next full year – until August of 2014. We believe this is nothing more than an attempt to put off resolution of this matter.  Respondents' assertion of witness availability should be no bar to getting this matter set within a reasonable amount of time; MBA Article 11.A.3. takes just such circumstances into consideration and provides that witness testimony may be proffered telephonically.

Thank you,

Katya J. Culberg

Associate Counsel

Writers Guild of America, West, Inc.

7000 W. Third Street

Los Angeles, CA 90048

323.782.4521

323.782.4806 - fax

kculberg@wga.org

---

**From:** DelMarie C. Broco [mailto:dbroco@nuimage.net]
**Sent:** Tuesday, August 27, 2013 5:25 PM
**To:** Paul Crost
**Cc:** Frank T. DeMartini (ADFTD@aol.com); Katya Culberg; Marguerite Hall

**Subject:** RE: WGAW v. Double Life Productions, Inc. et al.;["The Expendables"];12-SR-004

Dear Arbitrator Crost,

Hope this email finds you well. As stated in the email below from Marguerite Hall, Nu Image's General Counsel, Frank T. DeMartini is currently scheduled to be out of the Country from January to July 2014, consequently Nu Image is unavailable until beginning of August 2014.

In addition, due to the current production of "Expendables 3", which is scheduled to last until November, possibly December of this year, Nu Image would also not have available key witnesses to appear at an arbitration hearing on the months inquired in the email below (October, November or December 2013).

We thank you in advance and appreciate your understanding.

Best regards,

DelMarie C. Broco

DelMarie C. Broco

*Associate Counsel*

Nu Image | Millennium Films

6423 Wilshire Blvd. Los Angeles, CA 90048

T. 310-388-6900 | F. 310-388-6901

dbroco@nuimage.net

NOTICE: This E-mail is covered by the Electronic Communications Privacy Act 18 U.S.C. §§ 2510-2521 and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If you have received this E-mail and are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this E-mail by mistake, please notify us immediately and delete all copies of the message and its attachments from your computer. Thank you for your cooperation.

Please consider the environment before printing this email.

**From:** Marguerite Hall [mailto:MHall@wga.org]
**Sent:** Tuesday, August 27, 2013 2:21 PM
**To:** Paul Crost
**Cc:** DelMarie C. Broco; Frank T. DeMartini (ADFTD@aol.com); Katya Culberg
**Subject:** RE: WGAW v. Double Life Productions, Inc. et al.;["The Expendables"];12-SR-004

Dear Arbitrator Crost,

The Company is not available for January through July 2014. What would your availability be for October, November or December of this year?

Thank you,

**Marguerite Hall** | Legal Department

mhall@wga.org

PH: 323.782.4642



THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. This e-mail message and/or any attachments thereto may be confidential, legally privileged, and/or exempt from disclosure under applicable law. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, disclosure, dissemination, forwarding or copying of this e-mail message and/or attachments or taking of any action in reliance on the contents therein is strictly prohibited. Please notify the Writers Guild of America, West, immediately by reply e-mail or telephone, and delete the original message and all attachments from your system. Thank you

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. This e-mail message and/or any attachments thereto may be confidential, legally privileged, and/or exempt from disclosure under applicable law. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, disclosure, dissemination, forwarding or copying of this e-mail message and/or attachments or taking of any action in reliance on the contents therein is strictly prohibited. Please notify the Writers Guild of America, West, immediately by reply e-mail or telephone, and delete the original message and all attachments from your system. Thank you

# EXHIBIT B

**costa abrams & coate llp** | trial & transactional attorneys

1221 Second Street, Third Floor, Santa Monica, California 90401
tel 310.576.6161 fax 310.576.6160
A limited liability partnership including professional corporations

## REQUEST FOR STAY AND/OR CONTINUANCE OF ARBITRATION PROCEEDINGS

January 6, 2014

**Via E-Mail @ PECrost@gmail.com, Facsimile @ (562) 245-3623 (without attachments) and First Class Mail**

Paul Crost, Esq. (Arbitrator)
PAUL CROST MEDIATION
5318 East 2nd Street
Long Beach, CA. 90803
Phone: 562-608-8433

Re:   **In the Matter of the Arbitration between Writers Guild of America, West, Inc. and Jittery Dog Productions, Inc. f/s/o David Callaham v. Warner Bros., et al. (Relating to sequel payments in connection with "The Expendables") WGA Arbitration Tribunal Case No. 12-SR-004**

Dear Arbitrator Crost:

Our office has been recently retained by Double Life Productions, Inc., Millennium Films, Inc., Nu Image, Alta Vista Productions, Inc., Alta Vista Financing, LLC and Alta Vista Productions, LLC to represent their interests in the above-referenced arbitration. We understand that you have scheduled an arbitration hearing to take place on January 31, 2014. The subject of this arbitration is whether David Callaham (and his loan-out company) is entitled to certain sequel payments pertaining to the motion picture *The Expendables 2*.

However, please be advised that on behalf of our clients this office has recently filed a verified petition for writ of mandate, for a writ of prohibition and/or a writ of review against the Writers Guild of America, West, Inc. ("WGA") in Los Angeles County Superior Court. A copy of that pleading is enclosed and the case has been assigned to the Honorable James Chalfant at the Stanley Mosk Branch.

In the accompanying verified petition, (Double Life Productions, Inc.) the facts establish that Mr. Callaham engaged in wrongful and fraudulent conduct during a 2009 WGA screen credit arbitration pertaining to *The Expendables*. Mr. Callaham violated numerous WGA rules, including the WGA's Working Rule ¶15 which states that no "member shall accept credit which misrepresents the member's contribution to a picture or program."

During that 2009 screen credit arbitration, Mr. Callaham affirmatively claimed and misrepresented to the tribunal that he was entitled to sole "Written By" credit for *The Expendables*. Mr. Callaham represented that he alone wrote the screenplay for *The Expendables*. However, those representations were patently false and confirmed by Mr. Callaham's own written words and disclosures that came to light years later.

For example, in one August 17, 2009, email, Mr. Callaham claims that the script for *The Expendables* "IS F*#KING AWFUL. . . I am ASTOUNDED at how bad this is. I want you to know that it's nothing like what I wrote." On August 18, 2009, Mr. Callaham wrote another email stating the following: "Put it this way: the idea and very loose structure [of *The Expendables*] is mine. Everything else . . . I plead the fifth. Or, to put it another way, if I get sole credit like I am asking for . . . it would be A MIRACLE." Both of those emails are attached as exhibits to the verified petition.

Nevertheless, despite his own stated belief that he was not entitled to certain screen writing credits, Mr. Callaham largely "prevailed" in the 2009 WGA screen credit arbitration and is now asserting in this arbitration that he is correspondingly entitled to certain sequel payments for *The Expendables 2* based on the 2009 WGA screen credit arbitration.

Because Mr. Callaham intentionally withheld the aforementioned material emails from the arbitral tribunal, and concealed the limited extent of his contributions to *The Expendables* from the WGA screen writing credit arbitration panel in 2009 and instead continued to misrepresent before the arbitral tribunal that he was entitled to sole "Written By" credit for *The Expendables*, understandably our client does not believe that he should benefit by such conduct.

Our client only discovered Mr. Callaham's fraudulent conduct years later in early 2013 long after the WGA's stated twenty-one day period to appeal the credit determination expired. The pending writ of mandate seeks an order commanding the WGA to investigate Mr. Callaham for his fraudulent conduct and for his violations of the WGA rules and procedures. Alternatively, our client is seeking a writ of prohibition preventing the WGA from prosecuting this underlying arbitration. Finally, our client is seeking a writ of review or *certiorari* with respect to the 2009 WGA screen credit arbitration and to temporarily desist from prosecuting this underling arbitration.

Our client's verified petition was filed on December 24, 2013, and the WGA waived service of the summons on December 30, 2013, upon counsel's return to the office. Accordingly, the WGA's response to the verified petition is due on or about January 29, 2013. After receiving the WGA's response, our client intends to request that the Los Angeles County Superior Court hold a hearing on our client's requested relief. The first available date provided by the Superior Court was not until May of this year.

Accordingly, since the issues in the verified petition directly affect the issues in this arbitration, our client is respectfully requesting that this Tribunal stay and/or continue the pending January 2014 arbitration for a period of time until after the Los Angeles County Superior Court has had an opportunity to rule on our client's verified petition. A reasonable

request for a postponement of an arbitration hearing may provide grounds for a petition to vacate an arbitration award. California Code of Civil Procedure §1286.2(a)(5); *see also Humes v. MarGil Ventures, Inc.* (1985, 2nd District) 174 Cal.App.3d 486, 497. We have attempted to discuss and resolve this scheduling matter with opposing counsel but they have not returned our call but instead have advised us by letter that they are opposed to such a continuance.

Thank you for your prompt attention to this matter. If necessary we will make ourselves available for, and will arrange a status conference call with you and opposing counsel to discuss the issues raised herein.

Respectfully,

Charles M. Coate

CMC/bo
Enclosure

cc:   Katya J. Culberg, Esq. and Katherine Christovich, Esq. at WGA (via facsimile only at
      (323) 782-4806 (without enclosure))
      Client

# costa abrams & coate llp | trial & transactional attorneys

1221 Second Street, Third Floor, Santa Monica, California 90401
tel 310.576.6161   fax 310.576.6160
A limited liability partnership including professional corporations

# FAX

| To: | Paul T. Crost, Esq. (Arbitrator) | From: | Charles M. Coate |
|---|---|---|---|
| Fax | (562) 245-3623 | Pages: | 4 total (including cover sheet) |
| Phone: | | Date: | January 6, 2013 |
| Re: | **Writers Guild of America, West Inc. and Jittery Dog Productions Inc. f/s/o David Callaham v. Warner Bros., et al.** | Cc: | |

☐Urgent    ☐For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

MESSAGE:

160

**CONFIDENTIALITY NOTE:** *The information contained in this facsimile is confidential information intended only for the use of the individual or entity named above and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this facsimile is strictly prohibited. If you have received this facsimile in error, your courtesy will be appreciated in telephoning us collect to inform us of the misdirection and returning the original facsimile to us at the address above by mail. Thank you for your cooperation.*

# EXHIBIT C

Paul Crost
5318 East 2nd Street, Ste. 381
Long Beach, CA 90803
Tel:562 608 8433
Fax: 562 245 3623
Neutral Arbitrator

## BEFORE THE WRITERS GUILD OF AMERICA WEST, INC. – PRODUCERS ARBITRATION TRIBUNAL

| | |
|---|---|
| In the Matter of the Arbitration between<br><br>WRITERS GUILD OF AMERICA, WEST, INC. and JITTERY DOG PRODUCTIONS, INC. f/s/o DAVID CALLAHAM,<br><br>Complainants,<br><br>vs.<br><br>DOUBLE LIFE PRODUCTIONS, INC., MILLENNIUM FILMS, INC., NU IMAGE, ALTA VISTA PRODUCTIONS, INC., ALTA VISTA FINANCING, LLC and ALTA VISTA PRODUCTIONS, LLC,<br><br>Respondents,<br><br>Relating to sequel payments in connection with the theatrical motion picture entitled "THE EXPENDABLES." | [PROPOSED] ORDER DENYING RESPONDENTS' REQUEST FOR CONTINUANCE OF JANUARY 31, 2014 ARBITRATION HEARING |

The Arbitrator held a conference call on January 8, 2014 to address Respondents' request for a continuance of the arbitration hearing scheduled for January 31, 2014. During the call Respondents stated that the hearing should be continued until Respondents' two Los Angeles Superior Court actions filed on December 23, and 24, 2013, respectively, against Complainants had been adjudicated. Finding no good cause for the continuance, the Arbitrator denied the request. The January 31 hearing remains on calendar.

DATED: January 9, 2014

Paul Crost, Arbitrator

EXHIBIT D

**ROTHNER, SEGALL & GREENSTONE**
——————ATTORNEYS——————
**510 SOUTH MARENGO AVENUE
PASADENA, CALIFORNIA 91101-3115**

GLENN ROTHNER
ANTHONY R. SEGALL
ELLEN GREENSTONE
JONATHAN M. COHEN
———
MICHELE S. ANCHETA
JOSHUA ADAMS
MARIA KEEGAN MYERS
ELI NADURIS-WEISSMAN
ANTHONY P. RESNICK
CONSTANCE HSIAO

TELEPHONE:
(626) 796-7555

FACSIMILE:
(626) 577-0124

WEBSITE:
WWW.RSGLABOR.COM

January 15, 2014

BY EMAIL AND FIRST CLASS MAIL

Mr. Charles M. Coate
Costa Abrams & Coate LLP
1221 Second Street, Third Floor
Santa Monica, CA 90401

     Re:   *Double Life Productions, Inc. v. Writers Guild of America West, Inc. et al.,*
           USDC CV 14-0197 DMG (AJWx); and *Nu Image, Inc., et al. v. David E.*
           *Callaham, et al.,* USDC CV 14-0199 RGK (JCx)

Dear Mr. Coate:

     I received your January 13, 2014 letter addressed to Kathy Christovich and me, soliciting our withdrawal as counsel for the defendants/respondents in the two actions referenced above.

     We have reviewed the legal citations contained in your letter and the pleadings on file in both actions, including the exhibits attached to both the fraud complaint and the writ petition. It is our conclusion that, even assuming the truth of all of the factual allegations contained in the two pleadings (and the authenticity of the appended exhibits), there is no actual or potential conflict of interest between the WGAW and Mr. Callaham (or his loan-out company) within the meaning of Rule 3-310. Indeed, the interest of all of the clients we represent in the litigation is the same: to uphold the finality of a procedurally regular and contractually compliant credit arbitration conducted and concluded in 2009. Nothing alleged in the pleadings on file in either action provides a basis for pursuing a different objective. If additional facts come to light, we will reassess our position consistent with our professional obligations.

     We hope that the foregoing explanation dissuades you from seeking disqualification by motion. If not, we are available to meet and confer as required by the local rules.

                        Very truly yours,

                        Anthony R. Segall

ARS/jr

cc:   Katherine S. Christovich
       David E. Callaham

## CERTIFICATE OF SERVICE

By my signature below, I certify that the foregoing RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR TEMPORARY RESTRAINING ORDER AND ORDER DISQUALIFYING OPPOSING COUNSEL has been served via the Court's electronic filing system upon the following:

Attorneys for Petitioner

Charles M. Coate

1221 Second Street, Third Floor

Santa Monica, CA 90401

E-mail ccoate@cacllp.com

I further certify that the foregoing RESPONDENTS' OPPOSITION TO PETITIONER'S EX PARTE APPLICATIONS FOR TEMPORARY RESTRAINING ORDER AND ORDER DISQUALIFYING OPPOSING COUNSEL has been served by first-class mail upon the following:

Attorneys for Petitioner

Darius A. Vosylius

1221 Second Street, Third Floor

Santa Monica, CA 90401

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Dated: January 22, 2014

_____ /s/ Elizabeth Pugh _____

ELIZABETH PUGH