UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-00197 DMG (AJWx)** | Date | January 24, 2014 |
|---|---|---|---|

| Title | *Double Life Productions, Inc. v. Writers Guild of America West Inc., et al.* | Page | 1 of 7 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RETRAINING ORDER AND *EX PARTE* APPLICATION TO DISQUALIFY COUNSEL [Doc. ## 8, 9.]**

On December 24, 2013, Plaintiff Double Life Productions Inc. filed a petition in Los Angeles County Superior Court against Defendants Writers Guild of America West, Inc. ("WGA"), David E. Callaham, and Jittery Dog Productions, Inc. [Doc. # 1.] The petition requests: (1) a writ of mandate compelling the WGA to investigate and discipline Callaham and Jittery Dog Productions for allegedly fraudulent conduct; (2) a writ of prohibition to prevent the WGA from prosecuting a pending arbitration scheduled for January 31, 2014; and (3) a "writ of review or certiorari" of a 2009 WGA "screen credit arbitration." On January 9, 2014, Defendants removed the case to this Court asserting federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 because the claims pertain to a WGA collective bargaining agreement and thus are preempted under Section 301(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

On January 21, 2014, Double Life filed an *Ex Parte* Application for a Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC") Why a Preliminary Injunction Should Not Issue. [Doc. # 8.] Double Life also filed an *Ex Parte* Application to Disqualify Counsel for Defendants "and/or order shortening time to hear motion to disqualify." [Doc. # 9.] On January 22, 2014, Defendants filed an Opposition to both *Ex Parte* Applications. [Doc. # 10.] On January 23, 2013, Double Life filed a Reply. [Doc. # 12.]

For the reasons stated below, Double Life's *Ex Parte* Applications for a TRO and to Disqualify Defense Counsel are **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-00197 DMG (AJWx)** | Date | January 24, 2014 |
|---|---|---|---|
| Title | *Double Life Productions, Inc. v. Writers Guild of America West Inc., et al.* | Page | 2 of 7 |

# I.
# DISCUSSION

The Federal Rules of Civil Procedure explicitly authorize parties, for good cause, to seek relief via an *ex parte* application for expedited ruling rather than through a regularly scheduled motion. Fed. R. Civ. P. 6(c); *see generally Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488, 492-93 (C.D. Cal. 1995) (discussing proper use of the *ex parte* procedure). To justify *ex parte* relief, an applicant must make two separate showings. "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492 (emphasis added).

**A.**   *Ex Parte* **Application for a TRO**

TROs are governed by the same standard applicable to preliminary injunctions. *Niu v. United States*, 821 F. Supp.2d 1164, 1167 (C.D. Cal. 2011) (internal quotation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking injunctive relief must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Fox Broad. Co., Inc. v. Dish Network LLC*, 723 F.3d 1067, 1072-73 (9th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008)). An injunction is also appropriate when a plaintiff raises "serious questions going to the merits," demonstrates that "the balance of hardships tips sharply in [his] favor," and "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). As explained below, Double Life has not shown serious questions going to the merits nor a likelihood of irreparable harm.

First, Double Life requests the stay of an arbitration hearing scheduled for January 31, 2014. The Norris-LaGuardia Act ("the Act"), 47 Stat. 70, 29 U.S.C. §§ 101-115, constrains a district court's power to stay a labor arbitration. Under the Act, "Congress severely restricted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-00197 DMG (AJWx)** | Date | January 24, 2014 |
|---|---|---|---|
| Title | ***Double Life Productions, Inc. v. Writers Guild of America West Inc., et al.*** | Page | 3 of 7 |

the jurisdiction of the federal courts to issue injunctions in 'any labor dispute.'"[2]  *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1341 (9th Cir. 1990).  The Act provides:

> No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101.  The Ninth Circuit has expressed "serious doubts . . . regarding the ability of a party seeking [a federal Court order staying arbitration] to meet all of the requirements of sections 7 and 8 of the Act."  *Camping Const. Co.*, 915 F.2d at 1350.  Section 7 provides, in relevant part:

> No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect-
>
> (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained . . .;

---

[2] As the Ninth Circuit has noted:

> Section 13 defines the phrase "labor dispute" to "include[ ] any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employee*."  29 U.S.C. § 113(c) (emphasis added).  This definition is extraordinarily broad, and the Supreme Court has so interpreted it.

*Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1342 (9th Cir. 1990) (citing *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712-14, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982); *see also Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 146, 62 S. Ct. 520, 86 L. Ed. 750 (1942) ("We recognize that by the terms of the statute there may be a 'labor dispute' where the disputants do not stand in the proximate relation of employer and employee.").

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk vv |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-00197 DMG (AJWx)** | Date | January 24, 2014 |
|---|---|---|---|

| Title | *Double Life Productions, Inc. v. Writers Guild of America West Inc., et al.* | Page | 4 of 7 |
|---|---|---|---|

    (b) That substantial and irreparable injury to complainant's property will follow;

    (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

    (d) That complainant has no adequate remedy at law; and

    (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

*Camping*, 915 F.2d at 1342 (citing 29 U.S.C. § 107).[3]  Double Life has made no attempt to address the provisions of Section 7 in its Application or its Reply, and none of the assertions or facts in its *Ex Parte* Application address or relate to prongs (a) or (b).  While there are certain situations when the Act "is not not necessarily to be construed literally," none of those circumstances are present here.  *Id.* at 1343-44 (collecting cases).  Therefore, recognizing that no federal court may stay a labor arbitration "except in a strict conformity" with the Act, 29 U.S.C. § 101, Double Life has failed to establish that this Court has the jurisdiction to grant the requested stay.

    Second, Double Life requests a writ compelling the WGA to investigate Callaham's alleged fraud.  A claim is preempted by section 301 of the LMRA if the asserted cause of action involves a right conferred by virtue of a collective bargaining agreement ("CBA").  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  If the right exists "solely as a result of the CBA," the claim is preempted.  *Id.*  Here, Double Life seeks a writ to enforce WGA's own rules in the CBA that require it to discipline its own members.  (*Ex Parte* Application for a TRO at 14-15.)  It provides no basis aside from the CBA for requiring the WGA to investigate or discipline Callaham.  Accordingly, Double Life's request for a writ requiring the WGA to discipline Callaham is preempted by section 301 of the LMRA and there are no substantial questions going to the merits of this claim.

---

[3] Section 8 provides: "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."  29 U.S.C. § 108.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk vv |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-00197 DMG (AJWx)** | Date | January 24, 2014 |
|---|---|---|---|
| Title | *Double Life Productions, Inc. v. Writers Guild of America West Inc., et al.* | Page | 5 of 7 |

Third, Double Life's request for a "writ of review or certiorari" of a 2009 WGA "screen credit arbitration" also fails to raise serious questions going to the merits. Double Life cites no authority that would permit this Court to review this 2009 arbitration and fails to devote any argument to the merits of this writ. Double Life concedes that it "was not a party to the 2009 screen credit arbitration," and that the "WGA's internal appeal rules . . . expired long ago." (*Ex Parte* Application for TRO at 3.) Yet, it implies that the WGA is required to review its 2009 "screen credit arbitration proceeding" under its own rules. (*Id.*) Double Life has failed to establish serious questions going to the merits of this claim.

Double Life also has not established a likelihood of irreparable harm, required for both *ex parte* and injunctive relief. Double Life's only alleged injury is that it will likely lose in the January 31, 2014 arbitration hearing and an award issued against Double Life will likely be confirmed. (*Ex Parte* Application for a TRO at 28.) The Ninth Circuit has held that "unnecessarily undergoing arbitration proceedings" does not constitute "irreparable injury." *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990). The Court also notes that Double Life was aware of the January 31, 2014 hearing on September 19, 2013, when the arbitrator scheduled the hearing. (Christovich Decl. ¶ 13, Exh. A.) Double Life argues that the "pending WGA arbitration should be continued for several months until after the serious issues of fraud raised in this action are resolved." (*Ex Parte* Application for a TRO at 6 [Doc. # 8].) But Double Life knew of the alleged fraud in June 2013. (Declaration of Frank Demartini, Esq. ¶ 2.) More importantly, there is nothing that prevents Double Life from raising the alleged fraud as a defense at the arbitration itself. The Court thus sees no emergency other than one of Double Life's own making. *See* Court's Initial Standing Order at 9 ("*Ex parte* applications are solely for extraordinary relief and should be used with discretion."); *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) ("Lawyers must understand that filing an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire.").

Accordingly, the Court **DENIES** Double Life's *Ex Parte* Application for a TRO.

**B.** *Ex Parte* **Application to Disqualify**

Double Life also filed an *Ex Parte* Application for an order disqualifying Defense counsel from representing the WGA along with Callaham and Jittery Dog Productions, alleging that their interests are directly adverse because Double Life seeks a writ of mandate commanding WGA to investigate Callaham.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-00197 DMG (AJWx)** | Date | January 24, 2014 |
|---|---|---|---|

| Title | *Double Life Productions, Inc. v. Writers Guild of America West Inc., et al.* | Page | 6 of 7 |
|---|---|---|---|

Motions to disqualify are strongly disfavored. *See Gregori v. Bank of America*, 207 Cal. App. 3d 291, 300-01, 254 Cal. Rptr. 853 (1989) ("[M]otions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent."); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) ("Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary."). Such motions are often tactically motivated, and thus they "should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quotation and quotation marks omitted).

Courts considering motions to disqualify counsel by a third party must determine whether the party has standing to bring the motion. District courts in the Ninth Circuit considering this issue regularly rely on *Colyer v. Smith*, 50 F. Supp. 2d 966 (C.D. Cal. 1999). The *Colyer* court reviewed a split of authority on the issue of who has standing to bring a motion to disqualify, and found that "[t]he majority view is that only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client." *Colyer*, 50 F. Supp. 2d at 969. *Colyer* concluded that a non-client litigant "must establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III" and held that "a generalized attorney interest in the integrity of the legal system" was insufficient to support standing. *Id.* at 970-72. Double Life makes no argument regarding its personal stake in Defense Counsel's alleged conflict of interest. The Court thus concludes that Double Life lacks standing to seek disqualification of defense counsel.

To the extent that Double Life argues that the Court should use its *sua sponte* power to disqualify Defense counsel, the Court declines to do so. While "[t]he right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers," *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)), there is no reason to believe that such a drastic measure is warranted in this case. *See id.* (quoting *In re Marvel*, 251 B.R. 869 (Bankr. N.D. Cal. 2000), *aff'd* 265 B.R. 605 (N.D. Cal. 2001) ("A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity.")). Double Life argues that there is an actual conflict of interest because if Double Life prevails, the WGA will be compelled to investigate its own member. (Ex Parte Application for an Order Disqualifying Counsel at 3.) Defendants respond that both clients seek to uphold the 2009 arbitration decision, and regardless, *ex parte* relief is not warranted because Double Life has not established irreparable harm. The Court agrees. Double Life has not demonstrated irreparable harm nor presented facts that suggest it will be irreparably harmed by any conflict in Defense Counsel representing both WGA and Callaham. Moreover, it does not explain why it chose the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-00197 DMG (AJWx) | Date | January 24, 2014 |
| Title | *Double Life Productions, Inc. v. Writers Guild of America West Inc., et al.* | Page | 7 of 7 |

expedient of an *Ex Parte* Application when it knew that Defense counsel represented WGA and Callaham and Jittery Dog Productions at least as of May 2013 when the WGA served a claim on Double Life. (Christovich Decl. ¶¶ 10, 17 Exh. C.) As noted above, "it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492 (emphasis added).

As Double Life has not made the requisite showing either as to the merits of its request or the existence of irreparable harm, *ex parte* relief is not warranted.

## II.
## CONCLUSION

In light of the foregoing, Double Life's *Ex Parte* Applications for a TRO and to disqualify defense counsel are **DENIED**. Moreover, because Double Life's request for an OSC re preliminary injunction is premised on the same arguments as its TRO application, the request for an OSC also is **DENIED**.

**IT IS SO ORDERED**.